# ROCKWELL VS. THE MUTUAL LIFE INSURANCE COMPANY OF WISCONSIN.

EVIDENCE: (1.) *Written instrument interpreted in the light of surrounding circumstances.* (2.) *Renewal of life insurance policy: evidence upon which jury may find an absolute renewal.* (3.) *Res gestæ.* (4.) *How far insurance company bound by communications to its local agent.* (5.) *When the understanding of the assured is binding on the company.*

REVERSAL OF JUDGMENT: (6.) *On the ground that the verdict is contrary to the evidence.* (7.) *For the refusal of correct and pertinent instructions.*

1. Where the question, in an action upon a life insurance policy, was, whether a renewal of the policy by the company, not long before the death of the assured, was *conditional* or not, the jury might properly consider all the surrounding circumstances—the relations between the parties, their previous and subsequent conduct, and everything tending to throw light upon their real intentions in the negotiations that took place between them.

2. Where, upon receiving and retaining the premium for a renewal of the policy (some time after it became due), the insurance company, by its secretary, informed the assured that it would be in accordance with its rules to have a certificate of his good health, and requested him to send his own certificate thereof, but added, as the reason for not enclosing the renewal receipt, that the assured had not given the company his address, or instructed it where to send such receipt: *Held,* That the jury might find, upon this statement, that the assured had sufficient ground given him for believing that, while a certificate of good health was requested, the policy had been renewed absolutely, and not upon condition of such certificate being furnished.

3. Where the company relied upon the fact that the assured subsequently accepted and kept a renewal receipt which expressed upon its face that the renewal was conditioned upon the good health of the assured at the time such receipt was given, it was not error to admit evidence for the plaintiff tending to show that the true character of the receipt was for a time concealed from the assured on account of his critical condition, and that, as soon as it was communicated to him, he refused to accept it, and directed it to be sent back. These facts are admissible in evidence as a part of the *res gestæ*.

4. It seems, also, that a request to the defendant company's local agent to take back the conditional receipt, and request from the company a "clean receipt" or the money, would bind the company, although made in the absence of its officers, and never communicated to them by the agent.

5. If the assured not only understood in fact, *but had a right to understand*, from the letter of the defendant company's secretary, acknowledging the receipt of the premium on his policy, that the same was renewed unconditionally, then the company became bound as upon an unconditional renewal; and instructions which were substantially to this effect are held not erroneous.

Rockwell vs. The Mutual Life Insurance Company of Wisconsin.

6. Where the questions of fact have been properly submitted to the jury, and the court below has refused to grant a new trial on the ground that the verdict was contrary to the evidence, this court will not reverse the judgment merely because the weight of evidence seems to it to be against the verdict, but must determine whether there was such an absence of evidence tending to sustain the conclusion of the jury that, as a matter of law, the verdict ought not to stand.
7. A judgment will not be reversed for the refusal of an instruction asked by the appellant, though correct and pertinent, if the same instruction was fairly given in the general charge; and especially if the instruction refused was confused and liable to misconstruction.

APPEAL from the Circuit Court for *Waukesha* County. This action was brought in 1864. The decisions of the court upon two former appeals will be found reported in 20 Wis. 335, and 21 Wis. 548. On the third trial, the evidence showed substantially the same facts which are stated at length in the report last cited. Some additional facts were shown as to the circumstances under which the renewal receipt of October 6, 1862 (with a memorandum written across its face stating that the policy was renewed on condition that the assured was in good health at that time) was retained; and as to the request made by the assured as soon as he saw said receipt, and addressed to Mr. Small, the local agent of the company, asking him " to take back the receipt to the company, and to request them to give him a clean receipt, or give him his money." This evidence will sufficiently appear from the opinion, *infra.*

The following instructions, asked by the defendant, were refused.

" 1. If, upon the production of a certificate of health, the secretary had delivered to Mr. Rockwell, or his agent, or mailed to him, an unconditional receipt, on the 6th of October, upon payment of the renewal premium on that day, in ignorance of the fact that Mr. Rockwell was on that day seriously ill, the company would not be bound."

" 2. The receipt or waiver of a certificate of good health would not of itself create a liability. The

inquiry as to the fact of good health, at the date of the renewal, would still be open, and if the insured was, in fact, in ill health at the date of the renewal, and the company was ignorant of that fact, so far as that question is concerned the company would not be liable."

" 3. The company would not be in any case obliged to renew a policy after neglect to pay the premiums; and if they do renew, they may renew upon such terms as they choose; and the proviso indorsed upon the renewal receipt in this case was as valid as similar terms are in the original policy."

" 4. The letters written by Mr. Kellogg to Mr. Rockwell, on the 6th of October—the one addressed to New York, the other to Oconomowoc—have no longer any office whatever in the case, because the parties have only contended that those letters demanded a certificate of health; and if the secretary, having received the letter of Hill, waived a further certificate, and substituted the proviso therefor, then this case must rest upon the renewal receipt which was delivered at that time."

" 5. The withholding of the premium note and cash premium by the company cannot create a liability. So long as Mr. Rockwell held the receipt, the company might of right retain the money and note."

" 6. The fact that Mr. Rockwell was dissatisfied with the terms of the receipt, cannot affect the defendant. If he was dissatisfied, then he should have returned it, and received back his premium; but the renewal receipt having been retained until after his death, the plaintiff is bound thereby."

" 7. Upon the theory that the letter of the secretary is to be taken as the evidence of the contract, the real question to be determined is, whether the money was received upon the condition that Mr. Rockwell was in good health at the time the money was received. Upon this theory, if the jury find from the letter of

## APPENDIX TO PART FIRST. 375

Rockwell vs. The Mutual Life Insurance Company of Wisconsin.

the secretary, the letter written by Hill, January 17, 1863, the renewal receipt, and all the other facts proven, that the secretary intended, and that Rockwell understood or should have understood, that the policy was to be renewed upon condition that said Rockwell was, on the 6th of October, 1862, in good health, or that a certificate of Mr. Rockwell to that effect should be produced to the company, then your verdict must be for the defendant.

" 8. There is evidence in this cause tending to prove that Mr. Rockwell was not in good health on the 6th day of October, 1862, nor for several days prior thereto, and the jury cannot lawfully disregard this testimony. Such fact—that is to say, Mr. Rockwell's illness at the above mentioned date—being found, the plaintiff cannot recover in this action."

" 9. There is no testimony in the case, written or oral, tending to disprove the fact of Mr. Rockwell's illness, in New York, prior to and on the 6th day of October, 1862."

The court instructed the jury as follows:

" 1. It is contended by the defendant, that if Rockwell was seriously ill at the time the money and note were recived by the defendant, on the 6th day of October, A. D. 1862, that fact would relieve the defendant from all liability on the policy, and the defendant so requests me to charge, which I decline to do, and instruct you that it was unnecessary for Rockwell to disclose the then state of his health, if the company made no inquiry upon that point. For the purposes of this case, I will hold that the fact of Mr. Rockwell's ill health, at the time of the renewal is not at all material, unless you should find from the evidence that the policy was renewed upon condition that Mr. Rockwell was in good health. I give this for the purposes of this trial, and you need not take into consideration the fact of his sickness in any way, in coming to a verdict, unless you find a conditional

renewal as aforesaid, it being conceded for the purposes of this case, that if the renewal was conditional, the plaintiff cannot recover."

" 2. In determining the case it will be necessary for you to take into account all the circumstances as shown in evidence, in order to arrive at the intent and understanding of the parties.    Under the last opinion of the supreme court, the question, whether the renewal of the policy (if renewal there was) was conditional or unconditional, is one of fact, to be determined by you from the evidence; and if you come to the conclusion that Mr. Rockwell understood it to be an unconditional receipt for his money and note, it will be your duty to find for the plaintiff, and if a conditional one, then for the defendant; or in other words, if you come to the conclusion, from the evidence, that Rockwell well understood that his money and note were received unconditionally, it was enough to revive the policy.    On the other hand, if you come to the conclusion that he understood, or ought to have understood, that his money and note were received conditionally, you will find for defendant."

" 3. Subsequent to the receipt of the money by the defendant, Rockwell wrote a letter, by Hill, to the company.    The conditional renewal receipt came out. Rockwell did not receive this renewal receipt for some time, and not until he was quite ill.    When this was brought to his notice, he expressed his dissatisfaction, and directed it to be sent back and to demand his money; and I am inclined to think that if Rockwell had a right to come to the conclusion, from the letter of October 6, 1862, that the money was received unconditionally, the company would not have the right to send the conditional receipt.    If you find that Rockwell ought to have understood from the letter that the money was received unconditionally, then the company was bound to furnish an unconditional receipt.

Rockwell vs. The Mutual Life Insurance Company of Wisconsin.

Verdict for the plaintiff; new trial denied; and defendant appealed from a judgment on the verdict.

*Palmer, Pitkin & Hooker*, for appellant.
*Gill & Barber*, for respondent.

The following opinion was filed at the June term, 1868.

PAINE, J. The sole question reserved for the jury to pass upon by the former decisions in this case, was, whether the renewal of the policy was conditional or not. And it was held that, in determining this question, the jury might consider all the surrounding circumstances: the relations between the parties, their previous and subsequent conduct, and everything tending to throw any light upon their real intentions in the negotiations that took place between them. On the last trial this question was submitted to them; and it is evident from their verdict that they must have found that the renewal was unconditional.

The counsel for the appellant contended with great force, that this verdict could not be sustained upon the evidence. He commented on the surrounding circumstances in detail, claiming that they tended to show that the renewal was conditional, and to remove all doubt that might otherwise have existed. Certainly they tended in that direction. And if I had to pass upon the question of fact, upon the whole evidence, I am not certain that I could avoid the conclusion of the appellant's counsel. But that is not the question for us. On the contrary, we have only to determine whether there was such an absence of evidence tending to sustain the conclusion of the jury, that the court can say, as a matter of law, that the verdict ought not to stand. I do not think this can be said. And the strongest evidence in support of their conclusion is to be found, after all, in the original letter of the secretary of the company, acknowl-

edging the receipt of the money for the premium.    It is true, that letter called the attention of Mr. Rockwell to the fact that the rules required a certificate of health, and requested him to send his own.    But it did not state that this would be required as a condition to the renewal, and on the contrary there was that in it which indicated the contrary.

The secretary stated as a reason for *not then sending the receipt,* that he did not have Rockwell's address, and was uncertain whether his letter would reach him. Had not the jury the right to say that, upon this statement in the letter, Rockwell might well suppose that his money was received unconditionally, and that he would have received his receipt for it in that letter, if the secretary had only been certain of his address? And it is not probable that if the receipt had been then forwarded, it would have contained the condition which the secretary states he indorsed upon it before filing it away.    He would then naturally have expected that Rockwell would comply with his request, and send the certificate of health.    And he could not have intended to obtain this certificate and yet deliver a conditional receipt.    If he had complied with all they required, they could not have expected him to accept a receipt which carried on its face a suspicion of fraud or falsehood in such compliance.    And whatever considerations of caution may have induced the secretary to indorse the condition he did upon the receipt before filing it, the jury might well have inferred from the inherent improbability of the opposite conclusion, that if the receipt had then been sent, it would have been unconditional.    At all events, as the letter contained no intimation to Rockwell that any condition was, or was to be, attached to it, and intimated an entire willingness to have delivered it before any compliance with the request for a certificate of health, I cannot say, if the jury saw fit to find from this evidence that Rockwell had a right to

understand that his money was received unconditionally, that their verdict should be disturbed by this court, after the court below has refused to disturb it.

It is evident from the last two opinions of this court in the case, that they considered that the jury might well have drawn this inference from the letter, although it was not so certain that evidence of the surrounding circumstances might not have availed to rebut it, and give greater significance to the request it contained for the certificate of health. That evidence was introduced; and although it tends to show that the renewal was understood to be conditional, yet I do not think it so conclusive in its character as to require the court to set aside a verdict based upon the strong implication in the letter that the money was received unconditionally.

It remains to determine whether the judgment should be reversed upon any of the other exceptions. The evidence of *Mrs. Rockwell* as to the conversation between Rockwell and Small, in which the former directed the latter to take back the conditional receipt, and request a "clean receipt" or the money, was objected to. The ground of the objection seems to be that the conversation occurred in the absence of the officers of the company, and that it was never in fact communicated to the company. But it is a sufficient answer to say that Small himself was at that time the local agent of the company, and had himself brought the receipt from the company.

But even if this were not so, such evidence would seem to be admissible as part of the *res gestæ*. The company relied on the acceptance and keeping of the conditional receipt. Was not the plaintiff entitled to explain this by showing the actual facts—that the character of the receipt was for a time concealed from Rockwell in consequence of his critical condition, and that, as soon as it was in fact communicated to him, he refused to accept it, and directed it to be

sent back, even though this direction was not executed until after his death? I think this evidence would have been admissible for that purpose, even though the conversation had not occurred with the agent of the company.

The first instruction asked by the defendant was not applicable to the evidence, and was properly refused for that reason.

The second instruction asked seems to be based entirely on the assumption that the renewal was conditional, and was improper for that reason, as that was the very point to be determined.

The third instructed the jury that the condition was as valid as would have been a similar provision in the original policy. This ignored the main question, whether the condition was any part of the contract of renewal at all, and was properly refused.

The fourth was also properly refused, because it ignored entirely the question whether there had been an unconditional renewal originally, and made the whole question turn on the delivery and acceptance of the conditional receipt.

The fifth was abstract. It was not claimed that the withholding of the premium note and cash created a liability. It was only claimed that their acceptance unconditionally created it. The only bearing their retaining them had, was upon the question whether there had been any condition in their acceptance. And as that question was fairly submitted, the judgment could not be reversed for refusing an abstract instruction, even though correct, as to their withholding the note and cash being insufficient to create a liability.

The sixth instruction was objectionable in telling the jury that, as Rockwell retained the renewal receipt until his death, the plaintiff was absolutely bound by it. It disposed absolutely of all the evidence explanatory of that fact, and ignored the ques-

tion whether there had previously been an unconditional renewal.

The seventh instruction I have had more doubt about. Its main idea is correct. But it seems liable to some criticism on account of a little confusion and perhaps repugnance between its parts. It starts with the theory that " the letter of the secretary is to be taken as the evidence of the contract," and then proceeds to submit not only that letter but others, and the renewal receipt and " all the facts proven in the case," as evidence of the contract. It also states at the outset, that upon that theory the real question was, whether the money was received upon condition that Rockwell was in good health at the time it was received. At the end, it states the question to be, whether it was received on that condition, or on the condition that he should furnish a certificate of health. These matters are not of very serious importance, and do not materially obscure the main idea of the instruction. This was that the real question was, whether the renewal was conditional or not, and that if upon the whole evidence they were satisfied that it was intended as conditional by the company, and was so understood or ought to have been so understood by Rockwell, then it was conditional, and the plaintiff could not recover. But this instruction the court fully and explicitly gave in its general charge. And as this was so, I am of the opinion that the judgment ought not to be reversed for its refusal to give it in the somewhat confused manner in which it was presented in the defendant's request.

The eighth instruction was properly refused, because it ignored entirely the question of an unconditional renewal. If the policy was renewed unconditionally, it was immaterial whether Mr. Rockwell was sick or well at the time.

The ninth is of the same character. The question presented by it was material only in case it was first

found that the renewal was conditional; and the instructions given by the court saved the defendant the necessity of any such instruction, by telling the jury absolutely, that if they found that the renewal was conditional, they must find for the defendant. Certainly it could not ask for anything more than that, so far as that branch of the case was concerned.

I can see no valid ground for exception to the general charge. It was criticised as directing the attention of the jury too exclusively to the question as to Rockwell's understanding of the letter of the secretary. It was said that "it takes two to make a bargain," and that the understanding of both parties should have been ascertained. This is true. But I cannot think the jury could have been misled by anything in the charge. It informed them distinctly that they were to consider all the evidence "to arrive at the intent and understanding *of the parties.*" True, it then directed their attention more especially to the understanding of Rockwell, and told them that if they should find that he understood that his money was received unconditionally, they should find for the plaintiff. But it is obvious that the meaning was, that they must be satisfied that he had a right to so understand it. The court was only following the course indicated in the last opinion of this court (21 Wis. 554), where special attention was directed to the understanding of Rockwell; but of course this meant such understanding as the jury should be satisfied he had a right to arrive at. And this was strictly and naturally the proper inquiry. The company had written to him a letter. No matter what its secret intentions might have been, it is presumed absolutely to have meant by that letter just what Rockwell, from its contents, considered by him in the light of surrounding circumstances, had a right to understand it to mean. So that the real question was, how Rockwell had a right to understand the letter. And that

Rockwell vs. The Mutual Life Insurance Company of Wisconsin.

this was what was meant by the court below is entirely evident; for it told the jury expressly, that if, "on the other hand," they "came to the conclusion that he understood, *or ought to have understood*, that his money and note were received conditionally," they should find for the defendant.

The judgment should be affirmed.

*By the Court.*—Judgment affirmed.