# Elmore, Quillian & Co. *v.* Parrish Bros.

## *Breach of Contract.*

(Decided Jan. 14, 1911.  54 South. 203.)

1. *Sales; Contract; Price.*—In order to be enforcible every executory contract of sale must definitely fix the price or provide some definite method for ascertaining it.

2. *Same.*—Where the contract provided that "grades below strict, low middling, at differences to be mutually agreed upon at the time of delivery," instead of as provided for in the last quoted phrase, it would be unenforcible because of uncertainty as to the price, since the contract would then not require any part of the cotton to be of a grade equal to or better than strict, low middling, and would provide no price for that grade.

3. *Same; Contract; Construction.*—Where the contract for the sale of cotton provided for the sale of one hundred bales of cotton, on the following terms, bases American strict middling at 11 5-8; good middling 1-8 on strict middling; middling 1-8 of strict middling; strict low middling, 7-16 off strict middling, nothing below strict low middling, except at difference to be agreed upon at the time of delivery, such contract was not unenforcible because of uncertainty as to the price on the ground that it permitted delivery of a grade of cotton below strict low middling, but did not provide a price for such grade; since the legal effect of the provision as to grade below strict low middling was to exclude cotton of that grade, as an agreement to make an arrangement upon terms to be afterwards ascertained is futile.

4. *Same; Certainty as to Subject Matter.*—In the absence of a showing of a custom or usage definitely fixing the weight of a bale of cotton, a contract for the sale and delivery of one hundred bales of cotton at a named price per pound is unenforcible for uncertainty as to the amount of cotton sold.

5. *Contracts; Construction.*—Although a court cannot interpolate or eliminate material provisions in order to uphold a contract, it will when it can avoid construing contracts as void for uncertainty.

6. *Same; Terms; Action; Pleading.*—The complaint should allege with certainty and precision the parts of a contract which are material to enable the court to determine what it was, or to give the jury a criterion in assessing damages.

7. *Custom and Usage; Pleading.*—A custom or usage in the cotton business as to the weight of a bale of cotton must be pleaded in order to be relied on to show that a bale of cotton has a certain weight in such transaction.

8. *Evidence; Judicial Knowledge; Bale of Cotton.*—A court cannot take judicial knowledge of the weight of a bale of cotton.

9. *Pleading; Construction Against Pleader.*—Under the rule that pleading is construed most strongly against the pleader, it will be presumed in an action for breach of contract that the complaint alleged the terms of the contract as favorably to plaintiff as they would warrant.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by Elmore, Quillian & Company against Parrish Brothers, for the breach of two executory contracts for the sale of cotton. Judgment for the defendant on demurrer to the complaint, and plaintiff appeals. Affirmed.

TYSON, WILSON & MARTIN, for appellant. It was entirely competent for the parties to contract with reference to the weights of bales of cotton as may be shown by the usage and custom of the country, and it was not necessary to the validity of the contract that the weight of the cotton should have been named in it.—*Barlow v. Lambert*, 28 Ala. 704; *M. & E. R. R. Co. v. Cobb*, 73 Ala. 401; *E. T. V. & G. v. Johnson*, 75 Ala. 604; *M. & C. v. Gram*, 94 Ala. 554; *Foy v. Dawkins*, 138 Ala. 232; *Barnard v. Kellog*, 10 Wall. Parol testimony is competent in such cases to render the contract certain by showing aliunde the weight of a bale of cotton.—*Davis v. Adams*, 18 Ala. 264; *Smith v. Rice*, 55 Ala. 417; *McFadden v. Henderson*, 128 Ala. 211; see also 2

C. & P. 525; 100 Mass. 518; 45 La. Ann. 920; Jones on Evi. Sec. 447; *Chambers v. Ringstaff,* 69 Ala. 140; *Castor v. McCord,* 130 Ala. 321. The law does not favor, but leans against the destruction of contracts because of uncertainty.—*Holst v. Harmon,* 122 Ala. 460; *Robinson v. Bullock,* 58 Ala. 618; *Boykin v. Bank of Mobile,* 72 Ala. 262. Where a contract admits of two constructions, it will be construed so as to uphold it.— *Lively v. Robbins,* 39 Ala. 463; *Adams v. Adams,* 26 Ala. 279. Contracts are construed contra proferenten. 2 Mayf. 764; 2 Cyc. 279.

W. O. MULKEY, W. L. PARKS, and J. M. CHILTON, for appellee. Counsel insist that the contract set out is so uncertain and ambiguous as to price that the court was unable to collect from it what the parties intended and hence, cannot enforce it.—*Erwin v. Erwin,* 25 Ala. 226; *Adams v. Adams,* 26 Ala. 272; *Pulliam v. Schimpf,* 109 Ala. 179; *McIntyre L. & E. Co. v. Jackson L. Co.,* 517 So. 767; 9 Cyc. 329; 23 Wall. 85; 103 U. S. 155; 119 U. S. 149; 146 U. S. 497. Conceding that the weight could be determined by the custom or usage prevailing and thus arrive at the number of pounds sold, it is essential that such custom or usage be pleaded.—12 Cyc. 1097; 9 Cyc. 1097; 22 Enc. P. & P. 4056; *Antomarchi v. Russell,* 63 Ala. 356.

SAYRE, J.—This is an action for the breach of two several executory contracts for the sale and purchase of 100 bales of cotton. In two counts the contracts are set out in haec verba. In other two they are alleged according to their supposed legal effect. Touching the points in controversy, the language of those counts which set out the contracts in verbis is repeated in those counts which set them out according to their supposed legal effect, so that identical questions are raised

by the two types of count. In counts 1 and 3 the allegation is that the contract was for the sum of, to quote, "one hundred bales of cotton on the following terms, viz.: Basis, American Strict Middling at 11⅝, reweighed, f. o. b. Samson. Good Middling ⅛ on Strict Mid. Middling ⅛ off Strict Mid. Strict Low Middling 7-16 off Strict Middling. Nothing below Strict Low Middling except at differences to be agreed upon at the time of delivery." Counts 2 and 4 proceed upon a different, though similar, contract in which the last clause of the part quoted is varied as follows: "Grades below Strict Low Middling at differences to be mutually agreed upon at the time of delivery." The demurrer to the complaint, and to each count thereof, takes the point that the contracts declared upon are unenforceable for uncertainty on two accounts: (1) It appears that the defendants had the right under the contracts to deliver cotton of a grade below strict low middling, but it does not appear that any price for grades below strict low middling was agreed upon. (2) It is is not shown what the weight of the bales of cotton should be. The trial court sustained the demurrer to all counts.

There were two independent contracts and the meaning of each is to be determined upon consideration of its own terms without reference to the other, though they have much in common. On the face of the contracts alleged, whether alleged in haec verba or according to their supposed legal effect, it appears that the parties have agreed upon no price for cotton of a grade below strict low middling. It is conceded by appellants, and properly so, as we think, that in every executory contract of sale the price to be paid must be fixed or some mode provided for its ascertainment, or else the contract is unenforceable. A complete statement, therefore, of the first ground of demurrer required the

assertion, and the demurrer does assert that defendants (appellees) had the right in the solution of their obligations under the contracts alleged, to deliver cotton of grades below strict low middling; involving, necessarily, a correlative duty on the part of plaintiffs to receive and pay for cotton of lower grades. This assertion raises the first question at hand. Following a stipulation for the delivery of 100 bales of cotton, neither more nor less, of specified grades at a price set down in the contract, the language of the agreement in counts 1 and 3 is: "Nothing below Strict Low Middling except at differences to be agreed upon at the time of delivery." Here is an express negation of the right to deliver cotton of a grade below middling unless a future agreement should provide for that method of satisfying the contract. In this there is nothing of legal effect except that the delivery of cotton of a lower grade in discharge of the contract is excluded. As for the rest of the language used, an agreement to enter into an agreement upon terms to be afterwards settled between the parties, is a contradiction in terms, and amounts to nothing. The contract alleged in counts 1 and 3, as for anything yet appearing, was valid and enforceable.

To repeat the language of counts 2 and 4, it is: "Grades below Strict Low Middling at differences to be mutually agreed upon at the time of delivery." The difference between this and the language of the contract alleged in counts 1 and 3 is the difference between affirmation and negation. There is no guide to the intention of the parties but the language used. The marked difference in the language of the two contracts seems to make necessary a difference in the conclusion to be reached in respect to the intention thereby expressed. No language is to be found here which re-

quires that all or any part of the cotton to be delivered in the future should be of a grade equal to or better than strict low middling.  No reason can be assigned for denying to defendants the right to deliver merchantable cotton of a lower grade except that to hold the language employed at its face value would destroy the contract by rendering an essential term uncertain.  It is the duty of the courts to lean against the destruction of contracts on the ground of uncertainty.—*Holst v. Harmon,* 122 Ala. 453, 26 South. 157.  This is important, certainly, but another consideration of controlling importance is that courts have no right to impose contracts upon parties, and this they do when they interpolate or eliminate a term of material legal consequence in order to save them.  We find it impossible to eliminate the clause in question.  It follows, in our opinion, that the contract alleged in counts 2 and 4 is void for uncertainty.

Another defect, attributed by the demurrer to all the counts, is that the two contracts declared upon, idenical in this respect, are incapable of enforcement because they inadequately describe the subject-matter of the sales agreed upon.  The contract is for the sale and future delivery of one hundred bales of cotton at a specified price the pound.  If the parties had contracted with reference to specific bales of cotton then ascertained and set apart as the subject-matter of the contract, or to be ascertained and set apart in some agreed way subsequently and in advance of the time for actual delivery, as were the facts in the cases cited by appellants, there could be no difficulty about the enforcement on the score of uncertainty.  Computation in that case would settle every term.  But that is not the case alleged.  Nor do we know, in the absence of averment, how much cotton the parties intended when they used

the word "bales." It may be that this was determined for the parties by a custom with reference to which they ought to be held to have contracted, or it may have been determined by a supplemental agreement defining the term, or by a course of dealing between the parties from which a definition by agreement was to be implied. In connection with the written contracts, it would be competent to prove any or all these things, in a case properly presented by the pleading, without transcending the rule which denies the right to alter contracts in writing by parol evidence. Appellants cite cases which hold with respect to commercial contracts—the rule, however, is not limited to contracts of a strictly mercantile character—that evidence of a usage of trade, which the parties knew, or may be reasonably presumed to have known, is admissible for the purpose of explaining the meaning of contracts; and they argue id certum est, etc. But the question here is a question of pleading, not of evidence. There is no averment of a usage or custom of the cotton trade by which a bale of cotton is taken to mean 500—as appellants suggest—or other number of pounds, and in respect to which the parties may be held to have contracted. Nor is there averment in those counts which undertake to set out the contracts according to their legal effect that they contracted for the sale of bales of cotton of any certain weight—an averment which might have been sustained by proof of a supplemental agreement, express or implied, or of a custom or usage fixing for the parties the weight of a bale. The argument, therefore, notwithstanding appellant's stated concession that we are not required to know, necessarily assumes that we do know the existence of a general usage or custom of the trade which will supply the missing term of the contract. But we are not informed judicially or otherwise of any such

usage or custom. In fact, we believe there is no general understanding, custom, or usage in respect to the exact number of pounds intended when we speak of a bale of cotton. There is no usual or ordinary weight to bales of cotton. When we say that cotton is baled, or speak of cotton in bales, we mean only that it is packed for storage, for shipment, or for the market, in a certain way. We may assume to know that the requirements of the market are such that to pack the cotton in bales of less than a certain weight or more than a certain greater weight injuriously affects its value. But this requirement of the trade permits a wide variation, and as a matter of fact bales of cotton differ greatly in weight. The contracts in question do not in terms provide for a sale by the pound. But this we have no difficulty in supplying because we do know that in the real markets of the country real cotton is sold by the pound. As the contracts appear in the complaint, the amount of cotton contracted for is indeterminate. We think we could not safely undertake to enforce contracts with the terms of which, as those terms are understood in the markets of the country, the defendants might have complied by tendering bales weighing, say 350 or 750 pounds each, as the market price of cotton might be high or low —above or below the price agreed upon. A rule of pleading requires that all those parts of a contract counted upon, which are material for the purpose of enabling the court to form a just idea of what the contract actually was, or which are necessary for the purpose of furnishing the jury with a criterion in the assessment of damages, should be stated with certainty and precision.—1 Chit. Pl. 309. The presumption is that plaintiffs have stated their contract as favorably to themselves as its terms whether expressed or implied would warrant. The materiality of the missing

[Donaldson v. Wilkerson.]

member is not denied. If the complaint alleges all there was of the agreements, as we must assume they do, those agreements cannot be enforced because no breach can be assigned which can be compensated by any criterion of damages furnished by the contracts themselves.—*Erwin v. Erwin,* 25 Ala. 236; *Howard v. E. T. V. & G. R. R. Co.,* 91 Ala. 268, 8 South. 868; *Pulliam v. Schimpf,* 109 Ala. 179, 19 South. 428.

We are of opinion that the judgment of the trial court should be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.